## FACTS

### (1) Facts Regarding the Named Plaintiff

31.    Named Plaintiff Robert Gorman is a resident of the County of the Bronx, State of New York.

32.    On June 1, 2007, at approximately 2:10 a.m., Mr. Gorman was driving northbound on the Major Deegan Expressway in the County of the Bronx.

33.    Mr. Gorman was driving within the legal New York City speed limit of 50 miles per hour.

34.    Mr. Gorman signaled before making all lane changes.

35.    Mr. Gorman was not intoxicated nor was his ability to drive impaired by alcohol.

36.    Mr. Gorman was driving in accordance with all applicable traffic rules, laws and regulations.

37.    Nonetheless, at 2:10 a.m., Mr. Gorman noticed an unmarked car with activated police lights following him.

38.    Mr. Gorman carefully pulled over to the right side of the road on the shoulder.

39.    After Mr. Gorman pulled over, Police Officer Rick Wiley exited the unmarked police car and approached Mr. Gorman, who remained seated in his car.

40.    Officer Wiley accused Mr. Gorman of driving in excess of the speed limit and asked him how much he had been drinking that night.

41.    Mr. Gorman was wearing his safety belt.

42.    Mr. Gorman was detained for no reason.

9

43.    Mr. Gorman did not drive erratically.

44.    Mr. Gorman did not drive abruptly.

45.    Mr. Gorman did not drive recklessly.

46.    Mr. Gorman did not fail to comply with any orders to pull over.

47.    Mr. Gorman did not have slurred or impaired speech.

48.    Mr. Gorman did not have a flushed face.

49.    Mr. Gorman did not have impaired motor coordination.

50.    Mr. Gorman was not intoxicated or impaired.

51.    Mr. Gorman responded appropriately to the officer's questions.

52.    Mr. Gorman was not unsteady on his feet.

53.    Mr. Gorman did not have bloodshot or glassy eyes.

54.    Police Officer Wiley did not administer any of the National Highway
Safety Transportation Administration approved battery of field sobriety coordination tests.

55.    Rather, Police Officer Wiley asked Mr. Gorman to take a field alcohol
screening breath test.

56.    Police Officer Wiley asked Mr. Gorman to take a test even though he
had no basis for doing so.  Specifically, New York Vehicle and Traffic Law § 1194(1)(b)
provides:

> Field testing.  Every person operating a motor vehicle which has been
> involved in an accident or which is operated in violation of any of the
> provisions of the [VTL] shall, at the request of a police officer, submit to a
> breath test to be administered by the police officer.  If such test indicates
> that such operator has consumed alcohol, the police officer may request
> such operator to submit to a chemical test in the manner set forth in [VTL
> § 1194(2)].

10

57.     Mr. Gorman was not in an accident, nor did he operate his vehicle in violation of any of the provisions of the VTL.

58.     Nonetheless, Police Officer Wiley stopped Mr. Gorman without probable cause or reasonable suspicion and asked him to submit to a field alcohol screening breath test.

59.     The field alcohol screening breath test registered an insufficient sample noting the presence of alcohol.

60.     Officer Wiley handcuffed Mr. Gorman and arrested him.

61.     Mr. Gorman was arrested without a warrant.

62.     Mr. Gorman was arrested without probable cause.

63.     Mr. Gorman was arrested without reasonable suspicion.

64.     The mere presence of alcohol is an insufficient basis for a DWI arrest as a matter of New York law.

65.     On or about June 1, 2007, Police Officer Rick Wiley, filed an affidavit in the form of a Criminal Court Complaint in the Bronx County Criminal Court, State of New York, charging Named Plaintiff Robert Gorman with aggravated operation a motor vehicle while under the influence of alcohol (VTL § 1192[2a]), operation of a motor vehicle while under the influence of alcohol (VTL §§ 1192[2] and [3]), operation of a motor vehicle while ability impaired by alcohol (VTL § 1192[1]), and reckless driving (VTL § 1212).

66.     The Criminal Court Complaint was false.

67.     As a result of the unlawful stop and arrest, and Police Officer Wiley's false Criminal Court Complaint, the Bronx District Attorney's office charged Mr. Gorman with Aggravated Operation of a Motor Vehicle While Under the Influence of Alcohol in

11

violation of Vehicle & Traffic Law ("VTL") § 1192-2a; Operation of a Motor Vehicle While
Under the Influence of Alcohol in violation of VTL §§ 1192(2) and (3); Operation of a Motor
Vehicle While Ability Impaired by Alcohol in violation of VTL § 1192(1); and Reckless
Driving in violation of VTL § 1212.

68.     Mr. Gorman's case was heard by a jury beginning December 8, 2009.

69.     On December 18, 2009, the jury returned a verdict of not guilty on all
counts.

### (2) Facts Regarding the Proposed Class

70.     Upon information and belief, the Highway Patrol employs
approximately 400 full-time sworn officers who patrol the roadways of New York City.

71.     These officers generally patrol in eight-hour shifts.

72.     Each officer is expected to issue a certain minimum number of traffic
summonses and make a certain minimum number of arrests on each shift.

73.     The numbers of traffic summonses issued and arrests made are
carefully tracked by the Defendants through the CompStat system.

74.     Officers' promotions, assignments, overtime pay and other benefits are
directly correlated with the number of violations issued and arrests made by them over a
period of time.

75.     As a result, the New York City Police Department and the City of New
York place individual Highway Patrol officers under enormous pressure to make arrests,
especially for driving while intoxicated.

76.     Each of the class members was unlawfully stopped by the Highway
Patrol while driving in New York City.

12

77.     These stops were illegal because they were conducted without probable cause or reasonable suspicion and therefore violated the Fourth Amendment of the United States Constitution.

78.     Upon information and belief, some, but not all, Highway Patrol vehicles are outfitted with dashboard cameras or "DashCams" which record activity by the particular patrol car.

79.     The DashCams record both audio and video of interactions between officers and the public, including members of the proposed class.

80.     Each of these DashCams, like the one in use in Officer Wiley's vehicle, records dozens if not hundreds of unlawful vehicle stops every day.

81.     During Mr. Gorman's trial, the New York City Police Department was required to disclose recordings from the DashCam in use the night that Mr. Gorman was stopped.

82.     The DashCam thus disclosed contained actual footage of approximately five unlawful stops by the Highway Patrol.

83.     These five unlawful stops appeared to be made by the same patrol car in a single night.

84.     Mr. Gorman and other members of the proposed class continue to drive in New York City on an ongoing basis.

85.     As a result, money damages are not sufficient to end the systematic ongoing unlawful conduct of the Highway Patrol.

13

## FIRST CLAIM FOR RELIEF
(42 U.S.C. § 1983 & U.S. Constitution)

86.     Named Plaintiff realleges and incorporates by reference paragraphs 1 – 85 above.

87.     The New York City Police Department Highway Patrol's policy of indiscriminately stopping vehicles on New York roadways and administering field alcohol screening breath tests causes intrusions into the liberty and freedom of movement of those stopped.

88.     Such intrusions are "seizures" governed by the Fourth and Fourteenth Amendments to the United States Constitution, which requires that seizures be reasonable.

89.     Such intrusions are conducted under color of state law.

90.     Such seizures are not reasonable because they are conducted without either probable cause or reasonable suspicion that criminal activity may be afoot.

91.     Such intrusions amount to roving sobriety checkpoints.

92.     By sanctioning and enforcing the policy of indiscriminately stopping vehicles, all defendants acted intentionally and under color of state law.

93.     The unlawful stops were and are directly caused by unlawful policies, practices and customs devised, implemented, enforced, promoted, encouraged and sanctioned by the defendants, including but not limited to (1) the failure to adequately and properly screen, train and supervise Highway Patrol officers; (2) the failure to properly and adequately monitor and discipline Highway Patrol officers; (3) the overt and tacit encouragement and sanctioning of, and the failure to rectify, the Highway Patrol's suspicionless stops, seizures, questioning and administration of field alcohol screening breath tests.

14

## SECOND CLAIM FOR RELIEF
(*Respondeat Superior* for False Arrest and False Imprisonment)

94.     Named Plaintiff realleges and incorporates by reference paragraphs 1 through 93 above.

95.     Highway Patrol officers have unlawfully and unjustifiably detained, arrested, deprived of their liberty against their will, and imprisoned Named Plaintiff and other members of the class he seeks to represent.

96.     The Highway Patrol's suspicionless stops, seizures, questioning and administration of field alcohol screening breath tests were carried out without warrants.

97.     At all times mentioned, the unlawful false arrests and imprisonments of Named Plaintiff and members of the class he seeks to represent were without probable cause, were forcible and against their will.

98.     All of the foregoing occurred without any fault on the part of Named Plaintiff or members of the class he seeks to represent.

99.     At all relevant times, these Highway Patrol officers were employees of the City of New York and were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

100.    Consequently, the City of New York is liable under the doctrine of *respondeat superior* for their tortious actions.

## THIRD CLAIM FOR RELIEF
(Violation of the New York Constitution, Article I, Section 12)

101.    Named Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 100 above.

15

102.     The New York City Police Department Highway Patrol's policy of indiscriminately stopping vehicles on New York roadways causes intrusions into the liberty and freedom of movement of those stopped.

103.     Such intrusions are "seizures" governed by Article I, Section 12 of the New York State Constitution, which requires that seizures be reasonable.

104.     Such seizures are not reasonable because they are conducted without either probable cause or reasonable suspicion that criminal activity may be afoot.

105.     Such intrusions amount to roving sobriety checkpoints.

106.     By sanctioning and enforcing the policy of indiscriminately stopping vehicles, all defendants acted intentionally and under color of state law.

107.     The unlawful stops were and are directly caused by unlawful policies, practices and customs devised, implemented, enforced, promoted, encouraged and sanctioned by the defendants, including but not limited to (1) the failure to adequately and properly screen, train and supervise Highway Patrol officers; (2) the failure to properly and adequately monitor and discipline Highway Patrol officers; (3) the overt and tacit encouragement and sanctioning of, and the failure to rectify, the Highway Patrol's suspicionless stops, seizures, questioning and administration of field alcohol screening breath test.

### FOURTH CLAIM FOR RELIEF
(Malicious Prosecution – Individual Claim for Money Damages under Common Law)

108.     Named Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 107 above.

109.     Police Officer Wiley commenced this action without probable cause.

16

110.    As a result of defendants' actions, Named Plaintiff was placed under arrest and held in custody for approximately twenty-four hours before he was released.

111.    The information contained in Police Officer Wiley's Criminal Court Complaint were not true and, upon the jury trial which was held in this matter, the case was dismissed in its entirety.

112.    The action was terminated in favor of Named Plaintiff.

113.    The actions of Police Officer Wiley were wrongful, malicious, and designed to embarrass and damage Named Plaintiff.  Police Officer Wiley instituted the action with actual malice.

114.    Named Plaintiff suffered extreme mental and emotional anguish as a result of Police Officer Wiley's wrongful actions.  Named Plaintiff incurred substantial attorney fees and other costs as a result of Police Officer Wiley's deliberate and malicious conduct.

115.    Named Plaintiff has suffered harm, embarrassment, mental anguish and distress by being arrested by the New York City Police Department on the false charges brought by Police Officer Wiley.

116.    Police Officer Wiley's actions reflect a malicious, intentional, willful and reckless disregard of the rights of Plaintiff and warrant an award of punitive damages.

117.    Police Officer Wiley's intentional actions constitute malicious prosecution and Named Plaintiff is entitled to a judgment of and against Police Officer Wiley for compensatory and punitive damages.

118.    As a result of the foregoing, Named Plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

### FIFTH CLAIM FOR RELIEF
(Malicious Prosecution – Individual Claim for Money Damages under § 1983)

119.    Named Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 118 above.

120.    Defendants misrepresented and falsified evidence before the District Attorney.

121.    Defendants did not make a full and complete statement of facts to the District Attorney.

122.    Defendants withheld exculpatory evidence from the District Attorney.

123.    Defendants were directly and actively involved in the initiation of the criminal proceedings against Named Plaintiff.

124.    Defendants lacked probable cause to initiate criminal proceedings against Named Plaintiff.

125.    Defendants acted with malice in initiating criminal proceedings against Named Plaintiff.

126.    Defendants were directly and actively involved in the continuation of criminal proceedings against Named Plaintiff.

127.    Defendants lacked probable cause to continue criminal proceedings against Named Plaintiff.

128.    Defendants acted with malice in continuing criminal proceedings against Named Plaintiff.

129.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

130.    Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings were terminated in favor of Named Plaintiff on or about December 18, 2009.

131.    As a result of the foregoing, Named Plaintiff's liberty was restricted for an extended period of time, and he was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

### SIXTH CLAIM FOR RELIEF
(False Arrest – Individual Claim for Money Damages under § 1983)

132.    Named Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 131 above.

133.    As a result of aforesaid conduct by the defendants, Named Plaintiff was subjected to illegal, improper and false arrest by the defendants and taken into custody and caused to be falsely imprisoned, detained, and confined without any probable cause, privileged or consent.

134.    As a result of the foregoing, Named Plaintiff's liberty was restricted for an extended period of time, he was put in fear of his safety, and he was humiliated and subjected to handcuffing and other physical restraints, without probable cause.

19

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully prays that this Court:

 a. Certify this action as a class action on behalf of the proposed class pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedure, consisting of a class of all persons in vehicles stopped by the New York Police Department Highway Patrol without reasonable suspicion on New York City roadways from June 1, 2007 to the date of this complaint;

 b. Declare that the Defendants' acts, practices, policies and omissions have deprived Named Plaintiff and the class he seeks to represent of their rights under the Fourth and Fourteenth Amendments to the United States Constitution and Article I Section 12 of the Constitution of the State of New York;

 c. Order all appropriate injunctive relief as warranted, including but not limited to ordering Defendants to cease immediately their violations of plaintiffs' rights and the monitoring of Defendants' conduct going forward;

 d. Award compensatory damages to Named Plaintiff;

 e. Award punitive damages to Named Plaintiff;

 f. Order reasonable attorneys fees and costs to be paid by Defendants pursuant to 42 U.S.C. § 1988; and

 g. Grant such other and further relief as the Court deems just and equitable.

Dated: New York, New York
   May 12, 2010

           _____
             Adam D. Perlmutter

## **VERIFICATION**

I have read the foregoing complaint and hereby verify that the matters alleged

therein are true, except as to matters alleged on information and belief, and, as to those, I

believe them to be true.  I certify under penalty of perjury that the foregoing is true and

correct.

Dated:        New York, New York
              May 12, 2010

LAW OFFICES OF ADAM D. PERLMUTTER, P.C.

By: _____
                    Adam D. Perlmutter

260 Madison Ave., Suite 1800
New York, NY 10016
Tel: (212) 679-1990
Fax: (212) 679-1995

21